5-18-0385, Crane Station, Earl L. Peterson Trucking and Custom Personnel v. The Workers' Compensation Commission Counsel, you may proceed May I please report? My name is Murray Pinkston. I represent the public employer in this case Mr. Pinkston, can I ask you a question about this? The claimant filed an application for adjustment claim against an entity known as Earl L. Henderson Trucking The arbitrator issued a decision in which it lists the respondent as Earl L. Henderson Trucking Somehow, when the commission issued its decision, it listed the respondent as Premium Transportation slash Earl Henderson Trucking And when it gets to the circuit court, the case becomes Premium Transportation, Earl Henderson Trucking, Custom Personnel What's the point? What's going on here? Who are these other entities other than Earl Henderson Trucking? I actually understand the issue. As the public employer, I want the court to know that I and my client do not have an issue with this issue No, I have an issue with this issue I understand. I'm going to give you a short answer, and I'm going to truncate it as much as possible for my and my client's own purposes But it involves a series of loaning-borrowing employer relationships Well, let me ask you this question. Did Premium Transportation ever file a motion to intervene in this case? Did Custom Personnel ever file a motion to intervene in this case? I don't remember whether or not there was Well, they did not, but I don't remember whether or not They're not parties. They never were parties I believe that the parties had an agreement that this entity, which appears now as the appellant employer, was amended to the way it appears now as by agreement Given the borrowing-lending problems and the insurance issues that underlay those problems The problem I have with it is, it would appear as if Premium Transportation and Custom Personnel filed for a judicial review of a decision that they had nothing to do with The decision of the arbitrator, which was affirmed by the Commission, was a decision against Earl Henderson Truck Nobody else, Earl Henderson Truck And somehow, Premium Transportation jumps into it in front of the Commission and appeals an order that they had no connection to And when it gets to the Circuit Court, we have another entity jumping on the bandwagon And I don't know that two parties can make an agreement, invest a court with jurisdiction over entities it has no jurisdiction over You've got to file a motion to enter the action. You've got to do it, and it's not here Let's assume that the two of you have an absolute understanding and agreement of who the parties are How would an order be enforced against an entity that the Commission has no jurisdiction over? How could that ever be enforced? You're saying we have an agreement. Can your agreement confer jurisdiction on a tribunal of any kind? What if your people wake up later and go, hey, we lost, but this is ridiculous, we're not a party to this We didn't interview, we didn't file any appearances, you can't enforce this judgment against us What happens then? Can you see the problem? I absolutely see the problem, and I appreciate it very much As the panel understands, that there are insurance issues, and oftentimes very complicated insurance issues That underlie any employer that comes before the court And in the situations that I'm sure that you have faced with multiple levels of borrowing lending employers Especially in the context of temporary employees And especially in the context of labor services That there can create a lot of, and especially in the context of insurance companies that are liquidated We gave a good explanation, but why didn't you follow up with some kind of a petition or motion to intervene? You're still back to the fundamental premise. Everything you say is true There's a lot of legitimate, legal, and logical reasons why you did this We still have a dilemma of enforcing an order against a non-party Can we just pick somebody off the street and enter an order against them? And say by agreement we decided that person out there should be a party, so therefore they're a party How does that work? Well, to the extent that Earl Henderson Trucking is the original named entity And to the extent that I'm representing Earl Henderson Trucking Okay, now I was going to ask a down-state question. Who's your client? Who did you enter an appearance on behalf of? Who was I hired by or who did I enter an appearance? I entered an appearance of Inter-Aliac Earl Henderson Trucking Okay, okay, yeah. It's more important who you entered an appearance of Where we had jurisdiction over whom I absolutely understand and I hope that you can take away from this discussion And the lack of any writing or raising of these issues by either party We have an obligation to examine jurisdiction Whether you raise it or we don't Can I ask you another question? Who drafted this arbitrator's decision? Was it the arbitrator that drafted it? It is the worst decision I have ever read Eighteen pages of prolix regurgitation of medical evidence One paragraph not related to the other The stuff isn't listed in chronological order And in fact, five pages of medical records From three of the claimant's treating physicians Are presented to the decision before we ever find out The guy went to an emergency room This is the worst decision I have ever read And I've been on this court since 2000 It was not the proposed decision of either party, if I recall So let me ask you to cut to the chase here Which, if we ever get into the merits The merits are pretty straightforward The commission placed greater reliance upon the causation opinions of Kowalski and Smith Rather than on the contrary opinion of Dr. Cantrell Is that the bottom line of what they did? No I would say that, once again, the issue before us today Is the cervical condition Dr. Smith was one of the treating physicians But Dr. Smith only treated in the low back The low back and some other related maps And Dr. Smith specifically indicated that She would defer any opinion testimony regarding the cervical condition To Dr. Kowalski How did you end up losing the case then? How did you end up losing the case? What did the commission rely on in fighting against you? You see what I see Dr. Cantrell, my guy, straightforward Sees all the records Speaks very clearly to the records Especially the records between the time of the accident And the first complaints of neck pain He opines that there is no causal connection Because the complaints were not made soon enough It did not arise within two or three days after the accident On the other hand, Dr. Kowalski Admitted that he did not review the records From the time of the accident to the first complaints of pain He admitted that he wasn't really sure He couldn't tell on his records When the neck pain even started And when I asked him Before I do this Let me tell you that this appears At the cross-examination of Dr. Kowalski Which starts on a secured record 1311 I understood Justice Hopkins' earlier admission Regarding not just the identification of the deposition But the cross-examination as well In that cross-examination at 1312 I asked him, do you know Subsequent to the accident When the neck pain started The answer, I assume Within a few days In the next line My assumption That it started relatively, you know Immediately after the accident But I did not specifically ask him that question And then a couple pages later When I confirmed with him That he didn't review the post-accident records I say, so nothing in those records Specifically states the exact date the symptoms started The answer, the axial pain may be delayed But it should have started relatively quickly The axial pain, I've got a question The axial pain, if it's secondary to a distal injury Will come on relatively quickly Yes, you would expect that axial pain And muscle spasms start with a very specific A very short period of time after the incident A short period of time is like hours Well, maybe a day or two Drop down, I'm reading from 1314 now A lot of people actually start feeling worse Like two or three days after the case But while we're on that Don't the claimant's medical record reflect He told a Dr. Stanky That he began experiencing neck pain Within two days of his work accident Is that true or not true? That is true He told that to Dr. Stanky Many, many months down the road Right, but there's some evidence He did testify If the commission believes that that happened Then there is some evidence That he had neck pain within a couple days, right? Self-serving, albeit a self-serving statement, yeah Aren't the testimony of witnesses For the claimant and the respondent Already self-serving? One would think so But I think that we can I think that I would argue that The manifest weight of when neck pain started Is best shown in the contemporary records That clearly demonstrate it did not start Until after one You have time and apply, sir Counsel, you may respond Could you briefly weigh in On the overarching issue of How an order is enforced Against a non-party to the case? Who do you expect to collect from? Do you expect to collect from Henderson Trucking? Henderson Trucking is The person we sued And who we understood at the time Was the employer Obviously, we We just want insurance And the insurer for Henderson Trucking went belly up The Illinois A.R.T. Fund got involved And then subsequently down the line These additional entities came in as well You see the dilemma You know what's going to happen If you try and collect against One of the other two entities They're going to come in With a different set of orders Saying you can't collect from us We weren't parties to this This issue wasn't against us I understand And I don't have a better answer Than Mr. Princeton did So in effect Any indemnity is going to come from the fund It's the Illinois A.R.T. Fund That stepped up to In the shoes of Henderson That's my understanding We sued Henderson And during The pendency of the case We informed that the insurer Went belly up But why are these other parties Are you expecting to collect anything from them? Because if you are You're going to have a problem I can't answer that Further than what we have I'm sure it's that open That we're looking at collection From the A.R.T. Fund And maybe the fund Will be looking to other parties Possibly for indemnification But that's not your issue I'm hopeful so Right, nor your issue Well maybe I don't know yet Okay The panel had asked a question earlier About what What the arbitrator Or what the commission relied on And they specifically Stated in the decision That the arbitrator Places greater reliance Upon the opinions of Dr. Smith And Dr. DeVos in this case In finding the current condition of well-being And a policy related to the accident He raises an interesting point He's saying the medical records don't support Any reference to pain From way outside the realm I don't know if that's true But how do you respond to that? The medical records From the day of the accident Until January 23rd It's my understanding There's not a specific reference In that time frame That references my client Making a complaint That's included in the medical records There's a record from A medical record from St. Anthony's Hospital On the day of the The ER visit Which would have been the day of the accident That says After Sloan left the ER The radiology report noted That there was some concern About the appearance of a disc Recruited in a C5 C6 And the CT of the cervical spine And a further clinical follow-up Would be necessary Considering the need for evaluation Of the case with Jim Ross So although there was no complaint of pain I think there was Some reference to impairment Objective issues With the cervical spine And there were three MRIs Done subsequently That indicated disc herniations In C5 C6 and C7 So again Up until January 23rd There was no reference In the medical records Of neck pain Mr. Sloan testified And this is a secured record Page 2753 That he had neck pain The day after the accident And the records from the orthopedic center Southern Illinois Which would have been Dr. Steinke and Dr. Conrarty Who were predecessors of Dr. Kowalski And left the practice Which led to Dr. Kowalski getting involved On February 13th There was a record That he had sheet complaints Lower lumbar and cervical On February 25th 2013 Dr. Steinke records The notes indicate Neck pain started Within a day or two of the accident And I believe that is the Reference that Mr. Payson was referring to When he asked Dr. Kowalski If he read the records Or had any recollection Of when it started And he read from the transcripts And I followed up With Dr. Kowalski And that would be The secured record Page 1348 And he read from that note In that deposition And indicated that he Didn't remember reading from it But he read that it was included In the records And he testified That he did review Dr. Steinke's records He did review Dr. Conradi's records When he got involved in the case There was a further note On April 8th of 2013 Where Dr. Conradi noted The patient was involved In an MBA on 12-20-2012 Since that time He's had pain In his neck and upper extremity So you're saying It's in the record Albeit later on Referred to by the claimant Yes In that case There's specific testimony From David Sloan That it started a day or two After the accident And there's several references In the record He told us the history He was given to the treaty Prior to Dr. Kowalski And I would submit To the court If you can't rely on The self-serving statements From the patients Why do you ever take a history? I mean My reading of the commission's decision Is they weren't overly impressed With Dr. Cantrell's credentials As compared to Dr. Kowalski They noted that Kowalski Was a board certified orthopedic surgeon And Cantrell Had non-surgical credentials In physical medicine rehabilitation Which is another basis For believing, I suppose Kowalski over Cantrell Correct And I think In the arbitrator's decision Adopted by the commission They specifically, again, state That they're relying on The board certified orthopedic surgeon Dr. Kowalski Who has examined and treated the patient On a regular basis As compared to the opinions Proffered by the section 12 physician Dr. Cantrell Whose non-surgical practices Dedicated to physical medicine And rehabilitation Because you're saying The long and short of it is There is sufficient evidence In the record to support The commission's decision Is that the bottom line? I believe, Your Honor There's one other thing I wanted to point out Is when Dr. Kowalski Got involved He took a history Personally from David Sloan That history indicated That the chief complaint Was neck pain Left radio arm pain And he stated In the page The secured record Page 927 That according to the patient He was injured On December 20, 2012 In the NDA So he relied on The prior records From Sankey and Penrarty He took his own history From David Sloan And when he was asked His opinion in the deposition That would have been Page 1305 As a result of the accident He said Based on the history He reviewed The records he reviewed And his examinations It was his opinion Within a reasonable degree Of medical certainty That Mr. Sloan sustained injuries To his cervical spine Left-sided disc herniation At C6-7 And small disc herniation At C5-6 On top of the Pre-existing spondylosis He also indicated In his deposition That the accident Exacerbated the symptoms From the pre-existing spondylosis I would submit That there's That there's a conflict Potentially If you adopt Mr. Pinkston's argument That he relied on Improper assumptions Which I disagree with The commission heard Those issues There's a conflict Between what Opinion I elicited And the testimony That Mr. Pinkston elicited The commission did their job Which is to resolve Those medical conflicts And in this case They resulted In favor of my plan That I called action Just with regard to What you say is The improper assumption And As I understand The argument And the record The doctor did make An assumption As to when the pain started Based upon the record But there's also evidence Self-survey evidence As we've been describing it But evidence that Mr. Sloan Testified that the pain started Just a day or two afterwards And he specifically Told Dr. Kowalski that So I think he has a valid basis To make that assumption At that point If the patient's telling him That pain started Right No further questions? I believe there are Thank you, counsel Counsel, you may reply With regard to the last point Dr. Kowalski Testified to me That when I asked him about His review of those stinking records He says that On secure record 1316 Dr. Stanky saw him February 2015 There's really nothing in that I'm skipping down to line 11 There's really nothing in that record That specifically states When the symptoms had started Again, references in the accident Currently have the symptoms But it doesn't give a time frame As to specifically When the symptoms started And then he goes on To once again Testify as to Yeah, my assumption was that It started relatively quickly And then he says At 1312, line 15 Sorry, 16 But I did not specifically Ask him that question With regard to The St. Anthony's Emergency room notation The Employees, very capable counsel Pointed out that there was An issue with regard to Something that might need to be followed up With regard to a critical MRI There is an addendum To that record that he read And that appears at Secured record 1638 And it's entitled Addendum Note Dr. Schock Says that he received a call Regarding a spinal CT scan And Dr. Schock Stated that I did speak to the patient Prior to him leaving the emergency room department And he had no complaints Or symptoms In his arms or neck So There was not just no complaint of pain There was a specific denial Of any pain And finally, I think that We've played around that The Self-serving complaints Are still evidence I think the best evidence I think the manifest weight of the evidence Regarding the onset Is the One Two Three Four times That The employee went to a doctor Went to a doctor And with complaints Various complaints Especially with regards to his left arm Because he had cut it open But All of these Records This is not I didn't Complain to anybody I went to the doctor Four more times And didn't visually Any pain So I think that's The manifest weight Of the evidence Thank you counsel Thank you both For your arguments In this matter We take your invite Written disposition shall issue